## UNITED STATES DISTRICT COURT
### SOUTHERN DISTRICT OF OHIO
### EASTERN DIVISION

**RONALD LEE SMITH,**

       **Plaintiff,**

                                       **Case No. 2:23-cv-1947**

      **v.**                              **Judge Edmund A. Sargus, Jr.**

                                       **Magistrate Judge Chelsey M. Vascura**

**LOWE'S HOME CENTERS, LLC,**

       **Defendant.**

## OPINION AND ORDER

This matter is before the Court on Plaintiff Ronald Lee Smith's Motion for Partial Summary Judgment on Defendant's Affirmative Defenses (ECF No. 60), Plaintiff's Sealed Motion for Partial Summary Judgment on Compensatory Damages (ECF No. 61), Plaintiff's Motion for Partial Summary Judgment on All Issues of Liability (ECF No. 62), Plaintiff's Motion to Preclude Testimony of Gregory Johnson (ECF No. 63), Defendant Lowe's Home Centers, LLC's Motion for Summary Judgment (ECF No. 65), Defendant's Motion to Exclude and Strike Opinions of Plaintiff's Safety Expert Frank Burg, CSP (ECF No. 66), and Plaintiff's Motion for Partial Summary Judgment on Compensatory Damages (ECF No. 67), which is an unsealed and redacted version of Plaintiff's other motion by the same name (ECF No. 61).

For the reasons stated in this Opinion and Order, the Court **DENIES** Plaintiff's Motion for Summary Judgment on All Issues of Liability (ECF No. 62) and **DENIES** Defendant's Motion for Summary Judgment (ECF No. 65). Additional motion resolutions are explained later in this Opinion and Order. Mr. Smith may proceed to trial on his common law negligence claim.

## BACKGROUND

This premises liability case involves severe, disabling injuries suffered by Plaintiff Ronald

Lee Smith when he tripped and fell over a retaining wall in the loading dock area of the Lowe's store in St. Clairsville, Ohio. Mr. Smith, who was then a 50-year-old commercial truck driver, claims Lowe's was negligent for failing to maintain the area in a safe manner by failing to properly light the retaining wall area. The Parties both moved for summary judgment, but competing evidence in the record raises genuine issues of material fact best suited for resolution by a jury.

Most background facts in this case are not disputed. Mr. Smith worked as a commercial truck driver for Western Express, Inc. (Smith Dep., ECF No. 50-1, 9:15–17.) In the evening of December 13, 2022, he arrived at Lowe's to make a delivery, his first ever at that store. (*Id.*, 7:16–17, 13:17–22; Easterday Dep., ECF No. 5:22–25.)

Video and photo evidence in the record shows what happened next. The loading dock area at this Lowe's includes a ramp that slopes downward toward an outer wall of the building where drivers connect trailers for delivery and unloading into the store. (*See* ECF No. 50-1, PageID 722.) Facing the loading dock area, a wall runs along the left side, separating the downward-sloping area where trailers connect to the building (which this Court will call the "near side" of the wall) from a more level walking and driving area on the other side (which this Court will call the "far side"). (Hutson Dep., ECF No. 44-5, 38:16–41:7.) The loading dock area and wall can be seen in the below still image taken from a video recording of the incident on December 13, 2022. (ECF No. 58.) Mounted on top of a portion of the wall closest to the building, not seen in the still image below, is a partial chain link fence that prevents pedestrians from falling into the sloped loading dock area from that area on the far-side of the wall. (Hutson Dep., 39:17–25.) In the image, Mr. Smith is seen walking on the level area on the far side of the wall, seconds before he tripped and fell over it. (ECF No. 58.)



(*Id.*)

When Mr. Smith arrived, it was dark outside, and outdoor lights were on in the loading dock area, with one important exception. (*Id.*; Smith Dep., 20:6–9.) As can be seen in the still image above, a short concrete pillar is positioned on the far side of the retaining wall, right behind the wall's yellow-painted endpoint. (ECF No. 58.) Eight months earlier, in April 2022, a truck struck a light pole that was installed on that pillar, knocking the entire pole to the ground. (Carpenter Dep., ECF No. 44-4, 73:15–75:1; ECF No. 62-1, PageID 1200.) As of December 13, 2022, the light pole, which provided light to the retaining wall area, had not been replaced. (Hutson Dep., 43:21–44:8.)

According to Kelly Carpenter, a Lowe's supervisor who managed Mr. Smith's delivery on December 13, delivery drivers regularly parked near the loading dock and then checked in with store personnel at the loading bay doors on the side of the building past the far-side of the retaining wall. (Carpenter Dep., 18:18–22:21; 31:17–33:20.) Following that standard procedure, Mr. Smith

parked his truck near the top of the loading dock, walked around the retaining wall to the loading bay doors and buzzed in. (Smith Dep., 17:22–18:22.) No one answered, so he walked to the customer service desk at the front of the store, walking past his truck. (*Id.*, 19:1–14.) He then returned to the loading bay door to retrieve bolt cutters to open a seal on the back of his truck, again walking around the retaining wall. (*Id.*, 15:24–16:2, 19:15–18.) A Lowe's employee told Mr. Smith that an employee would bring bolt cutters out to him and instructed him to return to the loading dock area. (*Id.*, 16:1–2.)

When walking back to the loading dock area, Mr. Smith walked into a 16-inch-high portion of retaining wall near its mid-point on the far side, tripped over it, and fell head-first about 28 inches down into the concrete in the sloped area of the loading dock. (*Id.*, 16:2–3, 19:19–20:1; ECF No. 47-1, PageID 648.) Mr. Smith testified "because everything blended in, I didn't see no wall. I didn't see anything there to trip over. It just all blended in. But, there was lighting and shadows, you know." (Smith Dep., 23:2–6.) He testified he never saw the wall or the yellow-painted edge of the wall that night, and he does not remember if he saw the chain link fence that covers a portion of the top of the wall closest to the building. (*Id.*, 24:8–12, 25:1–4, 27:8–15.) He wears glasses, and he was wearing them when he tripped over the wall. (*Id.*, 21:22–24.) He was not distracted by a cell phone or other device. (*Id.*, 22:18–20.)

The image below, taken in July 2024 by a certified forensic examiner under conditions simulating the night of the fall (including the parked position of Mr. Smith's truck and trailer and the resulting shadows), shows an approximate view of where Mr. Smith walked into the retaining wall, from Mr. Smith's vantage point:

4



(ECF No. 62-6.)

Dr. Jeffrey Andre, a visual perception and human factors expert witness for Mr. Smith, concluded that "[a]s Smith approached the wall, there was no discernable contrast between the wall and the pathway, which would have indicated the wall's presence." (ECF No. 44-9, PageID 543–44, 548.) Frank Burg, a Professional Safety Engineer and another expert witness for Mr. Smith, concluded that Lowe's "failed to take reasonable and necessary action to provide Mr. Smith and others with a safe, suitable, and unobstructed path for access to their facility." (ECF No. 64-1, PageID 1324.) Lowe's expert witness, Gregory Johnson, a building inspector, concluded that the retaining wall area complied with applicable sections of the Ohio Basic Building Code (both the governing 1995 version in effect at the time of construction and the 2024 version), even without the broken light pole replaced. (ECF No. 47-1, PageID 653.)

Mr. Smith testified he suffered injuries to vertebrae C2 through C7 in his spine due to the

fall. (Smith Dep., 28:11–17.) He uses a wheelchair and can walk, but it is difficult for him. (*Id.*, 27:19–29:11.) He is unable to clean himself, dress himself, or write (*id.*, 28:25–29:4.), and he is doing occupational physical therapy (*id.*, 32:4–6.)

Mr. Smith sued Lowe's in the Belmont County, Ohio Court of Common Pleas for negligence under Ohio law. (ECF Nos. 1-1, 5.) Lowe's removed the action to this Court. (ECF No. 1.) Mr. Smith filed a Motion for Partial Summary Judgment on All Issues of Liability (ECF No. 62), and Lowe's filed a Motion for Summary Judgment (ECF No. 65). Lowe's responded in opposition to Mr. Smith's Motion (ECF No. 74), and Mr. Smith replied (ECF No. 78). Mr. Smith responded in opposition to Lowe's Motion (ECF No. 70), and Lowe's replied (ECF No. 80).

Additionally, Mr. Smith filed a Motion to Preclude Testimony of Gregory Johnson. (ECF No. 63). Lowe's responded in opposition (ECF No. 68), and Mr. Smith replied (ECF No. 69). Lowe's filed a Motion to Exclude and Strike Opinions of Plaintiff's Safety Expert Frank Burg, CSP. (ECF No. 66.) Mr. Smith responded in opposition (ECF No. 71), and Lowe's replied (ECF No. 81). Mr. Smith also filed a Motion for Partial Summary Judgment on Lowe's Affirmative Defenses. (ECF No. 60.) Lowe's filed a response in opposition to the Motion but agreed to withdraw two of its affirmative defenses. (ECF No. 72.) Mr. Smith replied. (ECF No. 77.)

## LEGAL STANDARD

Summary judgment is appropriate when "there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). The movant has the burden of establishing there are no genuine issues of material fact, which may be achieved by demonstrating the nonmoving party lacks evidence to support an essential element of its claim. *Celotex Corp. v. Catrett*, 477 U.S. 317, 322–23 (1986); *Barnhart v. Pickrel, Schaeffer & Ebeling Co., L.P.A.*, 12 F.3d 1382, 1388–89 (6th Cir. 1993). The burden then shifts to the nonmoving party

to "set forth specific facts showing that there is a genuine issue for trial." *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 250 (1986) (quoting Fed. R. Civ. P. 56). When evaluating a motion for summary judgment, the evidence must be viewed in the light most favorable to the non-moving party. *Adickes v. S.H. Kress & Co.*, 398 U.S. 144, 157 (1970).

A genuine issue exists if the nonmoving party can present "significant probative evidence" to show that "there is [more than] some metaphysical doubt as to the material facts." *Moore v. Philip Morris Cos.*, 8 F.3d 335, 339–40 (6th Cir. 1993). In other words, "the evidence is such that a reasonable jury could return a verdict for the non-moving party." *Anderson*, 477 U.S. at 248; *see also Matsushita Elec. Indus. Co. v. Zenith Radio Corp.*, 475 U.S. 574, 587 (1986) (concluding that summary judgment is appropriate when the evidence could not lead the trier of fact to find for the nonmoving party).

In this case, both parties moved for summary judgment. Each party, as a movant, bears the burden of meeting the summary judgment standard. *Ray v. McCloud*, 507 F. Supp. 3d 925, 930 (S.D. Ohio 2020) (Watson, J.). The failure of one party to carry its burden does not mean that the other party should prevail on its motion; rather, the Court should "evaluate each motion on its own merits and view all facts and inferences in the light most favorable to the nonmoving party." *Wiley v. United States*, 20 F.3d 222, 224 (6th Cir. 1994).

## ANALYSIS

The Court begins with the Parties' Motions to Exclude Expert Testimony. After concluding both Motions are not necessary to resolve at this stage, the Court addresses the Parties' Motions for Summary Judgment regarding Mr. Smith's negligence claim. Last, the Court decides Mr. Smith's Motion for Partial Summary Judgment on Lowe's Affirmative Defenses. The Court addresses the remaining pending motions in the Conclusion.

## I. Motions to Exclude Expert Testimony

Evidentiary rulings are made subject to the district court's sound discretion, *Frye v. CSX Trans., Inc.*, 933 F.3d 591, 598 (6th Cir. 2019), including the admissibility of expert testimony, *United States v. Dunnican*, 961 F.3d 859, 875 (6th Cir. 2020).

Mr. Smith moves to exclude the testimony and report of Greg Johnson, a certified building inspector, who concluded that Lowe's retaining wall and the surrounding area complied with applicable Ohio Basic Building Code regulations at the time of Mr. Smith's incident. (ECF No. 63; Johnson Report, ECF No. 65-4, PageID 1445.) Lowe's moves to exclude the testimony and report of Plaintiff's expert, Frank Burg, who concluded Lowe's "failed to take reasonable and necessary action to provide Mr. Smith and others with a safe, suitable, and unobstructed path for access to their facility" based on national and international safety standards. (ECF No. 66; ECF No. 66-1, PageID 1501.) Both experts' reports and testimony relate to the duty and breach elements of Mr. Smith's negligence claim.

Based on the analysis that follows in this Opinion and Order, the Court need not resolve the Parties' Motions to Exclude at this stage because neither expert's report and testimony is essential to show the presence or absence of a genuine issue of material fact as to the elements of Mr. Smith's negligence claim. Even if the Court excluded Mr. Johnson's report and testimony, genuine issues of material fact would remain regarding whether Lowe's owed a common law duty to Mr. Smith and whether it breached that duty. The same is true for Mr. Burg's report and testimony.

Accordingly, the Court **HOLDS IN ABEYANCE** Plaintiff's Motion to Exclude (ECF No. 63) and Defendant's Motion to Exclude (ECF No. 66).

## II.    Mr. Smith's Negligence Claim

To prevail in a negligence action under Ohio law, a plaintiff must show (1) the existence of a duty, (2) a breach of that duty, and (3) an injury proximately resulting from the breach. *Robinson v. Bates*, 857 N.E.2d 1195, 1201 (Ohio 2006).

### A.  Duty

Generally, the duty a premises owner owes under Ohio law depends on whether the injured person is an invitee, licensee, or trespasser. *Gladon v. Greater Cleveland Reg'l Transit Auth.*, 662 N.E.2d 287, 291 (Ohio 1996). As defined by Ohio law, a business invitee is a person who is on the premises of another by invitation, express or implied, for some purpose which is beneficial to the owner. *Light v. Ohio Univ.*, 502 N.E.2d 611, 613 (Ohio 1986); *Mota v. Gruszczynski*, 968 N.E.2d 631, 636 (Ohio 2012). As a commercial truck driver on the premises to make a delivery pursuant to a contract between his employer and Lowe's, Mr. Smith was a business invitee.

"Where the applicable relationship is one of property owner and business invitee, the property owner has a duty to exercise ordinary care and to protect the invitee by maintaining the premises in a safe condition." *Chilcutt v. Ford Motor Co.*, 662 F. Supp. 2d 967, 972 (S.D. Ohio 2009) (Spiegel, J.) (citing *Light*, 502 N.E.2d at 613). This general obligation encompasses duties "(1) to avoid injuring an invitee by negligent activities, (2) to warn invitees of latent or hidden dangers known to the store owner, (3) to make reasonable inspections of the business premises to discover any potential dangers, and (4) to take reasonable precautions to protect invitees from dangers that are foreseeable from the arrangement or use of the premises." *Hernandez-Butler v. Ikea U.S. E., LLC*, 435 F. Supp. 3d 816, 822 (S.D. Ohio 2020) (Cole, J.) (citation omitted).

The Court begins with several notes about Mr. Smith's claim and the arguments presented regarding duty. Lowe's argues that it had no affirmative duty to light the loading dock area under

the common law or under applicable Ohio building codes. (ECF No. 65, PageID 1381–87.) First, as explained later in this Opinion and Order, a property owner's compliance (or lack thereof) with applicable building code regulations may be used as evidence in a negligence action, but such evidence does not alone prove or disprove duty or breach under common law. *See Lang v. Holly Hill Motel, Inc.*, 909 N.E.2d 120, 124 (Ohio 2009) (also holding that a violation of an administrative building code does not constitute negligence *per se*).

Second, Mr. Smith does not argue that Lowe's had a statutory duty to light the retaining wall area. He only raises common law duty arguments, and the Court construes Mr. Smith's Complaint as raising only a common law negligence claim under Ohio law.

Third, Mr. Smith's argument that Lowe's owed him a common law duty encompasses more than just the lighting at the retaining wall. He contends that the loading dock's lighting situation was one of several factors that created a hazard (or enhanced the risk posed by the hazard) and that Lowe's was aware of the hazard. (ECF No. 70, PageID 1893–94.) He also argues that the hazard posed by the retaining wall was not open and obvious and that Lowe's failed to warn Mr. Smith about the hazard (through cones, caution tape, paint, fencing, or any other means). (*Id.*)

Ultimately, this case largely turns on whether Lowe's had a common law duty to warn Mr. Smith about the danger posed by the retaining wall and its shadowy condition or whether it owed no duty because the hazard was open and obvious. So the Court starts its analysis there.

### i.  Open and Obvious Doctrine

One key exception to a store owner's general duty of care to business invitees dominates the briefing here: "Where a danger is open and obvious, a landowner owes no duty of care to individuals lawfully on the premises." *Lang*, 909 N.E.2d at 123 (quoting *Armstrong v. Best Buy Co., Inc.*, 788 N.E.2d 1088, syllabus (Ohio 2003)). An open and obvious hazard is one that is

10

neither hidden nor concealed from view and is discoverable through ordinary inspection. *See Szerszen v. Summit Chase Condos.*, No. 09AP-1183, 2010 WL 3722637, at *2 (10th Dist. Ohio Ct. App. Sept. 23, 2010). The standard is objective, so the plaintiff does not have to actually observe the hazard for it to be considered open and obvious. *McConnell v. Margello*, No. 06AP-1235, 2007 WL 2729429, at *3 (10th Dist. Ohio Ct. App. Sept. 20, 2007). If "an invitee exercising ordinary care under the circumstances would have seen and been able to guard himself against the condition," then the hazardous condition is open and obvious. *Id.* "The rationale underlying this doctrine is 'that the open and obvious nature of the hazard itself serves as a warning. Thus, the owner or occupier may reasonably expect that persons entering the premises will discover those dangers and take appropriate measures to protect themselves.'" *Armstrong*, 788 N.E.2d at 1089 (quoting *Simmers v. Bentley Constr. Co.*, 597 N.E.2d 504, 506 (Ohio 1992)).

The hazard Mr. Smith encountered was the risk of walking into the retaining wall and suffering an injury. Lowe's contends that the retaining wall was an open and obvious hazard because the weather was clear, nothing obscured Mr. Smith's view of the wall, he walked around it several times before tripping over it, and nothing distracted him at the time of the fall. (ECF No. 65, PageID 1369–70.) To the extent the wall was too hard to see because it was dark, Lowe's also argues the darkness itself was an open and obvious condition that Mr. Smith consciously disregarded. (*Id.*, PageID 1372.) Mr. Smith argues that the darkness was one of several factors contributing to the hazard posed by the wall, alongside other factors like the lack of contrast between the sidewalk and the retaining wall (even when lit), the lack of yellow hazard paint beyond the end of the wall, the lack of complete fencing, and the dangerous drop-off into the sloped loading dock area. (ECF No. 70, PageID 1893.)

The lengthy briefing in this case results, in part, from different perspectives about how this

Court should consider the darkness as a part of the open and obvious analysis: as an open and obvious hazard itself, as a factor in whether the danger posed by the retaining wall was an open and obvious hazard, or as a potential "attendant circumstance" that could preclude application of the open and obvious doctrine. Certainly, Ohio courts filter darkness through several different lenses when applying the open and obvious doctrine. Regardless of how the Court squints at the darkness in this case, though, genuine issues of material fact remain regarding whether the hazard posed by the dark, shadowy area of the retaining wall was an open and obvious danger that obviated Lowe's duty of care to Mr. Smith as a business invitee on its property.

The Court addresses each angle of this doctrinal puzzle, mindful of Ohio court precedent that applying the open-and-obvious doctrine at summary judgment is an "extremely fact-specific" endeavor, and that "previous decisions regarding open and obvious dangers are thus of 'limited value.'" *Andler v. Clear Channel Broad., Inc.*, 670 F.3d 717, 725 (6th Cir. 2012) (first quoting *Henry v. Dollar Gen. Store*, No. 2002–CA–47, 2003 WL 139773, at *4 (2d Dist. Ohio Ct. App. Jan. 17, 2003); and then quoting *Hissong v. Miller*, 927 N.E.2d 1161, 1167 (2d Dist. Ohio Ct. App. 2010)).

### 1. Total Darkness

In some cases, the open and obvious doctrine absolves a property owner's duty to warn of latent hazards because the plaintiff consciously moved around in total darkness, leading to an injury. *See, e.g.*, *Clay v. U-Haul Co. of Massachusetts & Ohio Inc.*, No. 2:18-CV-1050, 2019 WL 6496942, at *6 (S.D. Ohio Dec. 3, 2019) (holding the open and obvious doctrine applied where the plaintiff walked around in a dark room, struck a table, and fell onto her back). In such cases, the darkness is both obvious and unusual, such that the darkness is the "hazard itself" that "serves as a warning" about potential danger. *Armstrong*, 788 N.E.2d at 1089.

12

This is not a total darkness case. Mr. Smith walked around the Lowe's loading dock area, reasonably navigating to and from the loading bay doors and his truck. He was aided generally by the light shining from the near side of the retaining wall, but that same light contributed to the various shadows cast around the walking areas on the far and near sides of the retaining wall. As discussed further below, the totality of the lighting conditions Mr. Smith encountered created a hazard distinct from total darkness. Accordingly, cases applying the open-and-obvious doctrine where the plaintiff suffered an injury by moving around surrounded by total darkness are not controlling here.

### 2. Partial Darkness

Rather than total darkness, Mr. Smith encountered a confusing panoply of light and shadows in the loading dock area (of which Lowe's was aware), obscuring the threat posed by the far side of the retaining wall and the drop-off on the near side of the wall. In similar cases where poor lighting conditions intersect with another potential hazard, Ohio courts have found genuine issues of fact as to whether the open and obvious doctrine applies. *See, e.g.*, *Kobasko v. Jo's Dairy Dream, L.L.C.*, No. 13 BE 35, 2015 WL 530144, at *6 (7th Dist. Ohio Ct. App. Jan. 26, 2015) (holding open and obvious doctrine did not apply where business invitee fell down dimly lit stairs upon opening a business's door for delivery); *Goldshot v. Romano's Macaroni Grill*, No. 19023, 2002 WL 857678 (2d Dist. Ohio Ct. App. May 3, 2002) (holding genuine issue of material fact existed regarding application of open and obvious doctrine where an invitee tripped and fell on a sidewalk and testified that "poor illumination coupled with the color of the sidewalk prevented her from seeing the defect in the sidewalk").

In such cases, the darkness is not so totally encompassing and unexpected that the darkness itself is an open and obvious hazard. Rather, the partial darkness, combined with other lighting

conditions, obscures other significant hazards and lessens the likelihood a person exercising ordinary care would be able to guard themselves against those hazards.

Here, reasonable jurors could disagree about whether a person in Mr. Smith's circumstances exercising ordinary care would have seen and understood the hazard posed by walking directly from the far side of the retaining wall to the back of his truck's trailer. As shown in video and photographic evidence, lights shining from the loading dock area cast shadows over the wall and darkened the area where the retaining wall met the ground on the far side. The area was not lit to counteract those shadows because Lowe's had not replaced the light pole on the far side of the retaining wall that was destroyed eight months earlier and had not devised another lighting solution.

Additionally, Lowe's standard practice (followed by Mr. Smith) of permitting drivers to park their trucks in any location around the top of the loading ramp before approaching the loading bay doors to check in may have added to the risk of danger. It appears the position of Mr. Smith's truck, and the lights shining on it, caused it to cast additional shadows around the retaining wall area. A reasonable jury may conclude a person in Mr. Smith's circumstances could assume the shadows in the area were created by trucks, parts of the building, or other typical objects in the area rather than a raised retaining wall or other obscured danger. Furthermore, Lowe's had placed no caution tape, construction cones or barrels, or other safety devices to warn pedestrians about the hazard (despite Lowe's itself possessing and selling many such items inside). Although pedestrians were protected from falling into the deepest drop-off area by a fence, that fence ended far before the end of the retaining wall, potentially indicating no hazard existed past the fenced-off area.

Based on evidence in the record, it appears Mr. Smith did not just encounter a dark area on

the ground and walk into it—a reasonable jury could conclude he encountered a mix of light, confusing shadows, a partial fence, and no discernable signs that a retaining wall was raised on the far side of the wall. Dr. Andre's report and testimony and his conclusion that "there was no discernable contrast between the wall and the pathway, which would have indicated the wall's presence" may help a jury understand why a person might reasonably choose to walk through such an area towards a better-lit area. (ECF No. 44-9, PageID 543–44, 548.)

Lowe's presents competing evidence. Mr. Smith walked to and from his truck to the loading dock doors at least twice before he walked into and fell over the far side of the retaining wall. And photographic and video evidence in the record shows that the wall may have been visible when viewed from the side closest to the downward-sloping area of the loading dock. But a reasonable person walking from the front of Mr. Smith's truck (which was parked in a usual position for evening delivery drivers) to the loading bay doors and back would not necessarily have seen the retaining wall and understood that it was also raised above the ground on the other side. *See Hernandez-Butler*, 435 F. Supp. 3d 816, 825–26 (noting that even if a reasonable person could see one side of a box on a store shelf, they might not necessarily comprehend its stability and the potential hazard posed by moving it).

Under the circumstances, genuine issues of material fact remain regarding whether a person exercising ordinary care would know and understand that a dangerous hazard existed in the path between the loading bay doors and the back of the trailer attached to his truck. Reasonable jurors could conclude there was no open and obvious hazard in front of Mr. Smith when he turned to walk in that direction. Other reasonable jurors might conclude that he should have avoided the shadowy area near the obscured retaining wall or that he should have seen the area from the lit side of the loading dock and concluded there was a raised retaining on the darker side.

Accordingly, this Court cannot say as a matter of law that the open and obvious doctrine absolves Lowe's of a duty to warn Mr. Smith of the latent hazard posed by the retaining wall under the circumstances.

### ii.  Attendant Circumstances

Mr. Smith also argues that if the danger posed by the retaining wall was open and obvious, attendant circumstances (including the mix of light and dark shadows cast in the area) render the open and obvious doctrine inapplicable, and therefore Lowe's would not be excused from its duty to protect him from the latent hazard posed by the wall. (*Id.*, PageID 1900.) "Although there is no precise definition of the term, Ohio courts have found that attendant circumstances include any distraction that would divert the attention of someone in the same circumstances and thereby reduce the amount of care an ordinary person would exercise." *Chilcutt*, 662 F. Supp. 2d at 975 (citing *McGuire v. Sears, Roebuck and Co.,* 693 N.E.2d 807, 810 (Ohio 1996)). "Such circumstances are, in short, all facts relating to a situation such as time, place, surroundings, and other conditions that would unreasonably increase the typical risk of a harmful result of an event." *Id.* (citing *Cash v. Cincinnati,* 421 N.E.2d 1275 (Ohio 1981)).

It is not clear whether Ohio courts would consider the mix of light and shadows encountered by Mr. Smith as an attendant circumstance. The Court has assessed this factor above as part of the open and obvious inquiry because the mix of light and shadows was part of the hazard that Mr. Smith encountered. Regardless, Mr. Smith need not show a genuine dispute as to attendant circumstances to avoid summary judgment. The attendant circumstances doctrine enters the picture only when a hazard is deemed open and obvious, and genuine issues of material fact remain about whether there was an open and obvious hazard here. *See Hernandez-Butler*, 435 F. Supp. 3d at 826–27 (holding the same under similar circumstances). Therefore, the Court does not opine

16

further on the issue, and it may be raised at trial.

### iii. Inherently Dangerous Work

Lowe's argues Mr. Smith is a "frequenter" under Ohio Revised Code § 4121.01 for the purposes of determining whether Lowe's owed him an affirmative, statutory duty of care under § 4101.11. (ECF No. 65, PageID 1388.) Lowe's further argues it has no such statutory duty because Mr. Smith was engaged in "inherently dangerous work." (*Id.*) Under that doctrine in Ohio law, "[a] general contractor who has not actively participated in the subcontractor's work, does not, merely by virtue of its supervisory capacity, owe a duty of care to employees of the subcontractor who are injured while engaged in inherently dangerous work." *Cafferkey v. Turner Const. Co.*, 488 N.E.2d 189, 192 (Ohio 1986). This line of cases regards a general contractor's duty of care arising under Ohio Revised Code §§ 4101.11 and 4101.12, which is not raised by Mr. Smith and is not otherwise at issue here. The "inherently dangerous work" area of Ohio law is not applicable to Mr. Smith's common law negligence claim, and the Court does not wade into it.

### B. Breach

Mr. Smith moves for summary judgment on all liability issues, including breach. (ECF No. 62, PageID 1190–93.) Lowe's responds that it could not breach a duty that it did not have, but it does not otherwise directly respond to Mr. Smith's breach arguments and does not move for summary judgment on the element of breach. (ECF No. 74, PageID 2131; *see* ECF No. 65.) Mr. Smith does not argue that Lowe's conceded the issue of breach by failing to respond to his arguments on that element, so the Court does not consider that issue. (*See* ECF No. 78.) Ultimately, genuine issues of material fact exist as to whether Lowe's breached a common law duty to Mr. Smith.

As established, Mr. Smith was a business invitee on Lowe's property. An invitee can show

that a property owner breached its duty of care to the invitee by establishing that (1) the owner was responsible for the hazard, (2) the owner had actual knowledge of the hazard and failed to warn of or remedy it, or (3) the hazard existed for a sufficient length of time to reasonably justify the inference that the failure to warn of or remedy it was attributable to a lack of ordinary care. *See Johnson v. Wagner Provision Co.*, 49 N.E.2d 925, 928 (Ohio 1943).

Based on evidence in the record, including the reports and testimony of Mr. Smith's two experts and other evidence about the conditions around the retaining wall and Lowe's awareness of the risk, reasonable jurors could conclude that Lowe's breached a duty of care to Mr. Smith. Jurors could rely on the lighting conditions around the retaining wall, the partial absence of fencing or another barrier to prevent a fall into the loading dock area, the absence of other indicators of a dangerous drop-off, Lowe's practice of requiring drivers to walk to and from the loading bay doors past the far side of the retaining wall, and other factors to conclude Lowe's breached a common law duty of care.

Even though Lowe's does not directly respond to Mr. Smith's breach arguments, evidence in the record is sufficient to raise a genuine issue of material fact as to breach. Lowe's has presented evidence that the retaining wall was partially lined with a fence at its deepest drop-off point, the end of the retaining wall was painted yellow, the near side of the wall and sloped area of the loading dock was lit, and Lowe's instructed evening delivery drivers to park near the top loading dock area, which was lit. Reasonable jurors could conclude that Lowe's did not breach a duty of care to Mr. Smith based on that evidence.

Additionally, Lowe's expert witness, Mr. Johnson, concluded that Lowe's complied with the applicable 1995 Ohio Basic Building Code regarding the loading dock area traversed by Mr. Smith, even without the broken light pole replaced, and that it would also comply with the 2024

18

version of the code, if it was applicable. Under Ohio law, violations of building code regulations can be evidence of negligence. *Lang*, 909 N.E.2d at 124. It may also be true that a jury could consider Lowe's compliance with Ohio building codes as evidence that Lowe's did not breach its duty. As noted above, the Court need not decide the admissibility of Mr. Johnson's report and testimony at this juncture because other evidence in the record is sufficient to create a genuine issue of material fact as to breach.

The Parties' competing evidence of breach is best left to the jury to resolve after the full presentation of evidence.

### C. Causation and Step-in-the-Dark Rule

Lowe's argues Mr. Smith's negligence claim fails as a matter of law because Mr. Smith stepped into total darkness, triggering the step-in-the-dark rule. (ECF No. 65, PageID 1388.)

Ohio's step-in-the-dark rule is an affirmative defense that relates to proximate causation. *Clay*, 2019 WL 6496942, at *6 (citing *Carter v. Forestview Terrace LLC*, 68 N.E.3d 1284, 1293–94 (8th Dist. Ohio Ct. App. 2016)). Under the step-in-the-dark rule, "one who, from a lighted area, intentionally steps into total darkness, without knowledge, information, or investigation as to what the darkness might conceal, is guilty of contributory negligence as a matter of law." *Posin v. A.B.C. Motor Ct. Hotel, Inc.*, 344 N.E.2d 334, 338 (Ohio 1976). "This rule does not prove contributory negligence but simply 'raises an inference of the lack of prudence and ordinary care on the part of a plaintiff'—in other words, an inference that the plaintiff's own negligence, at least in part, caused her injury." *Hissong*, 927 N.E.2d at 1168 (quoting *Posin*, 344 N.E.2d at 338–39). "[T]he inference does not arise '[i]f conflicting evidence exists as to the intentional nature of the step into the dark, the lighting conditions and degree of darkness, the nature and appearance of the premises, or other circumstances exist tending to disprove a voluntary, deliberate step into unknown darkness.'" *Id.*

(quoting *Posin*, 344 N.E.2d at 399).

Ohio courts recognize that "sometimes 'a person's step into the darkness is perfectly reasonable.'" *Carter*, 68 N.E.3d at 1291 (quoting *Tomasko v. Sohnly*, No. 15–CAE–10–0078, 2016 WL 1643036, *4 (5th Dist. Ohio Ct. App. Apr. 21, 2016)). Accordingly, the rule is one of reasonableness: if an injured plaintiff unreasonably stepped into the darkness, their actions might raise an inference that they lacked ordinary care and affect the determination of proximate cause. *Id.* at 1292.

Here, a genuine issue of material facts remains regarding whether Mr. Smith reasonably stepped into the darkness of the shadowy area that concealed the far-side of the retaining wall. Given the varying lighting conditions, the partial fence that stopped before the area Mr. Smith walked through, and other factors discussed above in open-and-obvious doctrine section, reasonable jurors could reach different conclusions about whether Mr. Smith was contributorily negligent in stepping into the darkness and about the overall question of proximate causation.

Because genuine issues of material fact exist regarding Mr. Smith's negligence claim, the Court **DENIES** Mr. Smith's Motion for Partial Summary Judgment on All Issues of Liability (ECF No. 62) and **DENIES** Lowe's Motion for Summary Judgment (ECF No. 65).

### III. Lowe's Affirmative Defenses

Mr. Smith moves for summary judgment on twelve of seventeen affirmative defenses raised by Lowe's. (ECF No. 60.) In response, Lowe's agreed to withdraw its fourth (statute of limitation and repose) and ninth (mitigation) affirmative defenses, but it opposes Mr. Smith's motion as to the rest. (ECF No. 72, PageID 1969.) In dispute are the third (failure to join necessary parties), fifth (no duty owed), sixth (comparative negligence), seventh (superseding/intervening cause), eighth (fault of unnamed third parties out of Lowe's control), tenth (assumption of risk),

twelfth (open and obvious doctrine), thirteenth (denial of duty based on status on property), fourteenth (lack of knowledge of hazard), and sixteenth (fault apportionment of unnamed third parties under Ohio Revised Code § 2307.23) affirmative defenses raised by Lowe's. (ECF No. 60, PageID 793.) A defendant bears the burden of proof at trial regarding its affirmative defenses. *See Cline v. Dart Transit Co.*, No. 21-3468, 2023 WL 3003190, at *4 (6th Cir. Apr. 19, 2023) (citing *Snyder v. Kohl's Dep't Stores, Inc.*, 580 F. App'x 458, 461 (6th Cir. 2014)).

Several affirmative defenses in dispute are addressed in the above analysis, including the fifth, sixth, twelfth, and thirteenth defenses, which all relate to duty or causation. Additionally, Lowe's tenth affirmative defense, that Mr. Smith assumed the risk of injury by stepping into the dark, of course, completely overlaps with the step-in-the-dark inquiry. The Court concluded genuine issues of material fact existed as to duty and proximate causation. Summary judgment to Mr. Smith is **DENIED** on Lowe's fifth, sixth, tenth, twelfth, and thirteenth affirmative defenses because they are tied up in those issues.

Mr. Smith is also not entitled to summary judgment on Lowe's seventh defense (superseding/intervening cause). Under Ohio law, "[a] defendant may be relieved of liability for his negligent conduct if an intervening act breaks the causal connection between the defendant's negligence and the injury." *Inskeep v. Columbus Zoological Park Ass'n*, 207 N.E.3d 876, 883 (5th Dist. Ohio Ct. App. 2023) (citing *Berdyck v. Shinde*, 613 N.E.2d 1014 (Ohio 1993)). "The intervention of independent or intervening forces will not break the causal connection between a negligent act if the intervention of such forces was itself probable or foreseeable." *Id.* (citing *Holdshoe v. Whinery*, 237 N.E.2d 127 (Ohio 1968)).

Lowe's argues that Mr. Smith's failure to use a flashlight or cell phone light was an intervening cause of his injuries. (ECF No. 72, PageID 1973–74.) These arguments overlap with

Lowe's argument on proximate cause and Mr. Smith's contributory negligence. Genuine issues of material fact remain for trial about proximate cause and the overlapping matters of whether Mr. Smith acted negligently and whether that negligence was an intervening cause of his injury, so summary judgment as to this affirmative defense is **DENIED**.

Mr. Smith is entitled to summary judgment on Lowe's third affirmative defense of failure to join all necessary parties. "Rule 19(a)(1) commands that a party be joined if in his 'absence complete relief cannot be accorded among those already parties.'" *Sales v. Marshall*, 873 F.2d 115, 121 (6th Cir. 1989) (quoting Fed. R. Civ. P. 19(a)(1)). Lowe's argues that Mr. Smith was required to add Mr. Smith's employer, Western Express, as a necessary party because Western Express "retains a subrogated interest in this matter." (ECF No. 72, PageID 1970.) Lowe's has not articulated why adding Western Express as a party is necessary to afford complete relief among those already made parties. Summary judgment is **GRANTED** to Mr. Smith on the third affirmative defense.

Mr. Smith is also entitled to summary judgment on Lowe's thirteenth affirmative defense that Mr. Smith's injuries were caused by third parties not under the control of Lowe's. Lowe's argues a jury could attribute Mr. Smith's damages to "the unknown trucking entity that knocked over the pole light" or to Western Express for failure to appropriately train Mr. Smith to perform his job "in suboptimal illumination." (ECF No. 72, PageID 1974.) "A defense of intervening, superseding cause cannot be based on mere speculation." *Nye v. Fostoria Distrib. Serv. Co.*, 604 N.E.2d 795, 797 (3d Dist. Ohio Ct. App. 1992). Lowe's arguments are not supported by evidence in the record sufficient to raise a genuine issue of material fact.

For the same reason, there is no genuine issue of material fact as to the sixteenth affirmative defense, relating to fault apportionment to third parties under Ohio Revised Code § 2307.23.

Summary judgment is **GRANTED** to Mr. Smith on the eighth and sixteenth affirmative defenses.

## CONCLUSION

The Court **GRANTS IN PART** and **DENIES IN PART** Plaintiff's Motion for Partial Summary Judgment on Defendant's Affirmative Damages and Memo in Support (ECF No. 60), **DENIES** Plaintiff's Motion for Partial Summary Judgment on All Issues of Liability (ECF No. 62), **HOLDS IN ABEYANCE** Plaintiff's Motion to Preclude Testimony of Gregory Johnson (ECF No. 63), **DENIES** Defendant's Motion for Summary Judgment (ECF No. 65), and **HOLDS IN ABEYANCE** Defendant's Motion to Exclude and Strike Opinions of Plaintiff's Safety Expert Frank Burg, CSP (ECF No. 66). Because neither party is entitled to summary judgment on liability, the Court **DENIES without prejudice to refiling** Plaintiff's Sealed Motion for Partial Summary Judgment on Compensatory Damages (ECF No. 61) and Plaintiff's Motion for Partial Summary Judgment on Compensatory Damages and Memo in Support Thereof (ECF No. 67).

Plaintiff may proceed with his common law negligence claim under Ohio law.

This case remains open.

**IT IS SO ORDERED.**

9/10/2025                                  s/Edmund A. Sargus, Jr._____
**DATE**                                   **EDMUND A. SARGUS, JR.**
                                           **UNITED STATES DISTRICT JUDGE**